UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

Kyle Lawson, et al.,                    )
                                        )
                    Plaintiffs,         )
                                        )
v.                                      )        No. 4:14-cv-00622-ODS
                                        )
Robert Kelly,                           )
                    Defendant.          )
_____ )
                                        )
State of Missouri,                      )
                                        )
                    Intervenor.         )

PLAINTIFFS' SUGGESTIONS IN OPPOSITION
TO INTERVENOR'S MOTION FOR JUDGMENT ON THE PLEADINGS

        Plaintiffs, by and through counsel of record, submit the following suggestions in

opposition to Intervenor's motion for judgment on the pleadings.

1

**Table of Contents**

Introduction ................................................................................................................. 6

Standard for Motion for Judgment on the Pleadings .................................................. 6

Argument ..................................................................................................................... 7

    I.    Federalism does not trump Plaintiffs' constitutional rights. ...................... 7

    II.   *Baker v. Nelson* is not controlling............................................................ 9

    III.  *Citizens for Equal Protection v. Bruning* is not controlling. ................... 13

    IV.  The marriage ban does not survive rational-basis review........................ 16

    V.   Plaintiffs seek the same "marriage" as different-sex couples, not a new institution of "same-sex marriage." ................................................................................. 18

Conclusion ................................................................................................................. 20

## Table of Authorities

*Cases*

*Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971) .......................................................... 13

*Baker v. Nelson*, 409 U.S. 810 (1972) (mem.) ............................................ 9, 10, 12, 13

*Baskin v. Bogan*, Nos. 1: 14-cv-00355-RLY-TAB, 1:14-CV-00404-RLY-TAB, 2014 WL 2884868 (S.D. Ind. June 25, 2014) .............................................................. 8, 12, 18

*Baskin v. Bogan*, Nos. 14-2386, 14-2387, 14-2388, 14-2526, 2014 WL 4359059 (7th Cir. Sept. 4, 2014) ........................................................................................ 8, 10, 12, 18

*Bird Hotel Corp. v. Super 8 Motels, Inc.*, 245 F.R.D. 644 (D.S.D. 2007) .................................... 7

*Bishop v. Smith*, Nos. 14-5003, 14-5006, 2014 WL 3537847 (10th Cir. July 18, 2014).. 12, 13, 18

*Bostic v. Schaefer*, Nos. 14-1167, 14-1169, 14-1173, 2014 WL 3702493 (4th Cir. July 28, 2014) ........................................................................................................... passim

*Bowers v. Hardwick*, 478 U.S. 186 (1986) .................................................................. 11

*Bowling v. Pence*, No. 1:14-cv-00405-RLY, 2014 WL 4104814 (S.D. Ind. Aug. 19, 2014)....... 12

*Brenner v. Scott*, Nos. 4:14cv107-RH/CAS, 4:14cv138-RH/CAS, 2014 WL 4113100 (N.D. Fla. Aug. 21, 2014) ................................................................................................ 12, 18

*Burns v. Hickenlooper*, No. 14-cv-01817-RM-KLM, 2014 WL 3634834 (D. Colo. July 23, 2014) ............................................................................................................... 18

*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) .................................... 9, 17

*Craig v. Boren*, 429 U.S. 190 (1976) ......................................................................... 11

*De Leon v. Perry*, 975 F. Supp. 2d 632 (W.D. Tex. 2014) ............................................ 12, 18

*DeBoer v. Snyder*, 973 F. Supp. 2d 757 (E.D. Mich. 2014) ............................................... 12

*Edelman v. Jordan*, 415 U.S. 651 (1974) ..................................................................... 10

*Franklin High Yield Tax-Free Income Fund v. Cnty of Martin*, 152 F.3d 736 (8th Cir. 1998)...... 7

*Frontiero v. Richardson*, 411 U.S. 677 (1973) ............................................................... 11

*Geiger v. Kitzhaber*, Nos. 6:13-cv-01834-MC, 6:13-cv-02256-MC, 2014 WL 2054264 (D. Or. May 19, 2014) ..................................................................................................... 12

3

*Ginsburg v. InBev NV/SA*, 623 F.3d 1229 (8th Cir. 2010)...........................................................7

*Hicks v. Miranda*, 422 U.S. 332 (1975)........................................................................................10

*Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612 (1985).........................................................17

*Huffman v. Credit Union of Texas*, No. 11-0022-CV-W-ODS, 2011 WL 5008309 (W.D. Mo. Oct. 20, 2011) ..........................................................................................................................7

*Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979)................................13

*Kitchen v. Herbert*, 755 F.3d 1193 (10th Cir. 2014)...........................................................passim

*Latta v. Otter*, No. 1: 13-cv-00482–CWD, 2014 WL 1909999 (D. Idaho May 13, 2014)...........12

*Lawrence v. Texas*, 539 U.S. 558 (2003).........................................................................10, 11, 19

*Lion Oil Co. v. Tosco Corp.*, 90 F.3d 268 (8th Cir. 1996)............................................................7

*Love v. Beshear*, No. 3:13-cv-750-H, 2014 WL 2957671 (W.D. Ky. July 1, 2014) ...................12

*Loving v. Virginia*, 388 U.S. 1 (1967)...............................................................................passim

*Lucas v. Forty-Fourth Gen. Assemb. of Colo.*, 377 U.S. 713 (1964) ............................................9

*McGee v. Cole*, No. 3:13-24068, 2014 WL 321122 (S.D. W.Va. Jan. 29, 2014)........................12

*New York v. United States*, 505 U.S. 144 (1992).........................................................................8

*Obergefell v. Wymyslo*, 962 F. Supp. 2d 968 (S.D. Ohio 2013) ...............................................18

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999).............................................6

*Rhines v. Weber*, 544 U.S. 269, 279 (2005).............................................................................15

*Rhines v. Weber*, CIV 00-5020-KES, 2002 WL 33969082 (D.S.D. July 3, 2002)......................15

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984) ..........................................................................19

*Romer v. Evans*, 517 U.S. 620 (1996)......................................................................................11

*Safley v. Turner*, 586 F. Supp. 589 (W.D. Mo. 1984)................................................................16

*Schuette v. Coal. to Defend Affirmative Action*, 134 S. Ct. 1623 (2014).......................................8

*SmithKline Beecham Corp. v. Abbott Labs*, 740 F.3d 471 (9th Cir. 2014)................................14

*Sosna v. Iowa*, 419 U.S. 393 (1975) ..........................................................................................8

*State v. Jackson*, 80 Mo. 175 (1883)........................................................................................16

4

*United States v. Windsor*, 133 S. Ct. 2675 (2013) ................................................................. passim

*W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624 (1943) ........................................................... 9

*Whitewood v. Wolf*, 992 F. Supp. 2d 410 (M.D. Pa. 2014) .................................................. 12, 18

*Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir.2008) ...................................................... 14

*Wolf v. Walker*, 986 F. Supp. 2d 982 (W.D. Wis. 2014) ......................................... 9, 10, 12, 18

*Young v. Hayes*, 218 F.3d 850 (8th Cir. 2000) .......................................................................... 13

*Zablocki v. Redhail*, 434 U.S. 374 (1978) ................................................................................ 19

***Statutes***

42 U.S.C. § 1983 ........................................................................................................................... 6

750 Ill. Comp. Stat. Ann. 5/201 (2014) ..................................................................................... 17

Minn. Stat. Ann. § 517.01 (2013) ............................................................................................... 17

Missouri Revised Statutes § 451.022 ............................................................................................ 6

***Other Authorities***

Op. Mo. Att'y Gen. 308-67 ......................................................................................................... 16

***Constitutional Provisions***

Missouri Constitution, art. I, § 33 ................................................................................................. 6

United States Constitution, amend. XIV, § 1 ................................................................................ 6

**Introduction**

Plaintiffs—Kyle Lawson, Evan Dahlgren, Angela Curtis, and Shannon McGinty—bring this action to challenge Defendant's refusal to issue them marriage licenses for the sole reason that they seek to marry someone of the same sex.[1] Pursuant to 42 U.S.C. § 1983, they seek an injunction requiring Defendant to issue marriage licenses to them and a declaration that Missouri Revised Statutes section 451.022; article I, section 33 of the Missouri Constitution; and any other statutory or common law preventing same-sex couples from marrying subject to the same terms and conditions as different-sex couples (collectively, "the Marriage Exclusion") violate the Equal Protection and Due Process Clauses of the U.S. Constitution (U.S. Const. amend. XIV, § 1).

The State of Missouri intervened and moved for judgment on the pleadings. Missouri is not entitled to judgment on the pleadings and, instead, Plaintiffs are entitled to summary judgment for the reasons set forth in the suggestions in support of their motion for summary judgment and incorporated herein by reference.

**Standard for Motion for Judgment on the Pleadings**

"Judgment on the pleadings should be granted only if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law." *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "This is a strict standard, and under it the Court must accept as true all facts pled by the plaintiff and draw all reasonable inferences from the pleadings in the plaintiff's favor." *Bird Hotel Corp. v. Super 8*

---

[1] The named defendant in this case is the official who denied Plaintiffs marriage licenses pursuant to the laws challenged in this case. The State of Missouri has intervened to defend those laws. References to "Defendant" in these suggestions refer to the named defendant but, with regard to the challenged laws, the references are equally applicable to the State of Missouri.

6

*Motels, Inc.*, 245 F.R.D. 644, 645 (D.S.D. 2007) (citing *Franklin High Yield Tax-Free Income Fund v. Cnty of Martin*, 152 F.3d 736, 738 (8th Cir. 1998); *Lion Oil Co. v. Tosco Corp.*, 90 F.3d 268, 270 (8th Cir. 1996)). "As a general rule, a Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a 12(b)(6) motion to dismiss." *Huffman v. Credit Union of Texas*, No. 11-0022-CV-W-ODS, 2011 WL 5008309, at *1 (W.D. Mo. Oct. 20, 2011) (citing *Ginsburg v. InBev NV/SA*, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010)), *aff'd by Huffman v. Credit Union of Texas*, No. 13-1881, 2014 WL 3377778 (8th Cir. July 11, 2014).

Judgment on the pleadings is appropriate only if, assuming all facts pleaded by Plaintiffs and all reasonable inferences drawn from those facts are true, Missouri is nevertheless entitled to judgment as a matter of law. Here, Plaintiffs have alleged that they are excluded from marriage under the challenged laws, that they are harmed by this exclusion, and that there is no government interest served by the classification excluding them that is sufficient to justify it. Thus, Plaintiffs have stated a claim that the Marriage Exclusion violates their rights under the Fourteenth Amendment, and judgment on the pleadings is not warranted.

**Argument**

Missouri suggests several alternative reasons why it believes it should be granted judgment on the pleadings. All of the suggested reasons lack merit. Judgment on the pleadings is not warranted.

## I. Federalism does not trump Plaintiffs' constitutional rights.

Federalism does not trump the individual constitutional rights secured against infringement by the State. "State laws defining and regulating marriage, of course, must respect

the constitutional rights of persons[.]" *United States v. Windsor*, 133 S. Ct. 2675, 2691 (2013) (citing *Loving v. Virginia*, 388 U.S. 1 (1967)).[2] The "'virtually exclusive province'" of the states to regulate domestic affairs is always "subject to those guarantees." *Id.* (quoting *Sosna v. Iowa*, 419 U.S. 393, 404 (1975)). As the Tenth Circuit recently concluded, "the experimental value of federalism cannot overcome plaintiffs' rights to due process and equal protection." *Kitchen v. Herbert*, 755 F.3d 1193, 1228 (10th Cir. 2014), *aff'g Kitchen v. Herbert*, 961 F. Supp. 2d 1181 (D. Utah Dec. 20, 2013), *petition for cert. filed*, No. 14-124 (Aug. 5, 2014). Indeed, "[o]ur federalist structure is designed to 'secure[ ] to citizens the liberties that derive from the diffusion of sovereign power' rather than to limit fundamental freedoms." *Id.* at 1229 (quoting *New York v. United States*, 505 U.S. 144, 181 (1992) (quotation omitted)).

Missouri suggests, with a citation to *Schuette v. Coal. to Defend Affirmative Action*, 134 S. Ct. 1623 (2014), that our Constitution allows a majority of citizens the right impose discriminatory policies on "difficult" subjects. But *Schuette* reaffirmed that the outcomes of democratic processes—regardless of whether they relate to "difficult" subjects—are subject to constitutional review when they injure the constitutional rights of individuals. 134 S. Ct. at 1632, 1636; *see also Baskin v. Bogan*, Nos. 14-2386, 14-2387, 14-2388, 14-2526, 2014 WL 4359059, at *7 (7th Cir. Sept. 4, 2014) ("Minorities trampled on by the democratic process have recourse to the courts; the recourse is called constitutional law."), *aff'g Baskin v. Bogan*, Nos. 1: 14-cv-00355-RLY-TAB, 1:14-CV-00404-RLY-TAB, 2014 WL 2884868 (S.D. Ind. June 25, 2014),

---

[2]     *Windsor* contradicts the Eighth Circuit's prior view that each "State 'has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created,' [which] necessarily includes the power to classify those persons who may validly marry." *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859, 867 (8th Cir. 2006) (citation omitted).

8

*Wolf v. Walker*, 986 F. Supp. 2d 982 (W.D. Wis. 2014). Indeed, the notion that individual rights to due process and equal protection are subordinate to the majority's judgment fails for the same reasons cited in *Windsor*, *Loving*, and *Kitchen*. "One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections." *W.V. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 638 (1943); *see also Lucas v. Forty-Fourth Gen. Assemb. of Colo.*, 377 U.S. 713, 736-37 (1964) ("A citizen's constitutional rights can hardly be infringed simply because a majority of the people choose that it be."). Almost all of the marriages bans recently struck down by federal courts were enacted by referendum, but that did not exempt them from constitutional review. *See, e.g.*, *Kitchen*, 755 F.3d at 1228 ("The protection and exercise of fundamental rights are not matters for opinion polls or the ballot box."); *cf. City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448 (1985) ("It is plain that the electorate as a whole, whether by referendum or otherwise, could not order [government] action violative of the Equal Protection Clause . . . .").

## II. *Baker v. Nelson* **is not controlling.**

Missouri is mistaken in its claim that the Supreme Court's 1972 summary dismissal for want of a substantial federal question in *Baker v. Nelson*, 409 U.S. 810 (1972) (mem.), is dispositive here. Indeed, the Supreme Court decided *Windsor* without any mention of *Baker*, which "speaks volumes regarding whether *Baker* remains good law." *Bostic v. Schaefer*, Nos.

9

14-1167, 14-1169, 14-1173, 2014 WL 3702493, at *7 (4th Cir. July 28, 2014), *aff'g Bostic v. Rainey*, 970 F. Supp. 2d 456 (E.D. Va. 2014), *petition for cert. filed*, No. 14-153 (Aug. 8, 2014).[3]

As a summary adjudication, *Baker* is "not of the same precedential value as would be an opinion of th[e Supreme] Court treating the question on the merits." *Edelman v. Jordan*, 415 U.S. 651, 671 (1974). In particular, the Supreme Court has explicitly instructed that lower courts are not bound by such a disposition when "doctrinal developments indicate [the Court would now rule] otherwise." *Hicks v. Miranda*, 422 U.S. 332, 344 (1975) (internal quotation marks and citation omitted). Thus, "[s]ummary dismissals lose their binding force when 'doctrinal developments' illustrate that the Supreme Court no longer views a question as unsubstantial, regardless of whether the Court explicitly overrules the case." *Bostic*, 2014 WL 3702493, at *6 (citing *Hicks*, 422 U.S. at 344).

The Supreme Court's jurisprudence on due process and equal protection issues, like those raised in *Baker*, has developed substantially since 1972. *Id.* at *7. As the Seventh Circuit recently noted, "*Baker* was decided in 1972—42 years ago and the dark ages so far as litigation over discrimination against homosexuals is concerned." *Baskin*, 2014 WL 4359059, at *7. In *Lawrence v. Texas*, 539 U.S. 558 (2003), the Court recognized that the Due Process Clauses of the Fourteenth Amendments "afford constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education....

---

[3] "Not even the dissenters in *Windsor* suggested that *Baker* was an obstacle to lower court consideration challenges to bans on same-sex marriage." *Wolf v. Walker*, 986 F. Supp. 2d 982, 991 (W.D. Wis. 2014). Indeed, even the Eighth Circuit's erroneous decision in *Citizens for Equal Prot. v. Bruning*, 455 F.3d 859 (8th Cir. 2006), did not assert that *Baker* resolved the constitutionality of marriage bans today.

10

Persons in a homosexual relationship may seek autonomy for these purposes, just as heterosexual persons do." *Id.* at 574. As a result, the Court struck down a Texas statute that criminalized same-sex sodomy and repudiated its post-*Baker* holding in *Bowers v. Hardwick*, 478 U.S. 186 (1986), as "not correct when it was decided, and … not correct today." *Lawrence*, 539 U.S. at 560, 578-79. Moreover, in *Windsor*, the Court invalidated section 3 of DOMA on the basis that it violated the Fifth Amendment's Due Process Clause. 133 S. Ct. at 2694-95. "These cases firmly position same-sex relationships within the ambit of the Due Process Clauses' protection." *Bostic*, 2014 WL 3702493, at *7.

Since 1972, the Supreme Court has also developed its equal protection jurisprudence and included gay men and lesbians within its protection. In *Craig v. Boren*, 429 U.S. 190 (1976), and *Frontiero v. Richardson*, 411 U.S. 677 (1973), for instance, the Court identified sex-based classifications as quasi-suspect, causing them to warrant intermediate scrutiny rather than rational basis review. In *Romer v. Evans*, 517 U.S. 620 (1996), the Court struck down a Colorado constitutional amendment that prohibited legislative, executive, and judicial action aimed at protecting gay, lesbian, and bisexual individuals from discrimination. The Court found that the law's "sheer breadth is so discontinuous with the reasons offered for it that [it] seems inexplicable by anything but animus toward the class it affects," which the Court determined meant that the law "lacks a rational relationship to legitimate state interests." *Romer*, 517 U.S. at 632.

Most recently—and most directly—*Windsor* explained its holding in both due process and equal protection terms. 133 S.Ct. at 2693, 2695. *Windsor* is incompatible with the notion that the exclusion of gay men and lesbians from marriage is an insubstantial constitutional question.

*See Baskin*, 2014 WL 4359059, at *7 (finding that "[s]ubsequent decisions such as [*Romer*, *Lawrence*, and *Windsor*] ... make clear that *Baker* is no longer authoritative").

These numerous "doctrinal developments foreclose the conclusion that the issue is, as *Baker* determined, wholly insubstantial." *Kitchen*, 755 F.3d at 1208. "Before *Windsor*, the courts were split on the question whether *Baker* was still controlling." *Wolf*, 986 F. Supp. 2d at 991. Since *Windsor*, every court to consider the issue has held that *Baker* is no longer controlling. *Baskin*, 2014 WL 4359059, at *7 ; *Bostic*, 2014 WL 3702493, at *6 (citing *Bishop v. Smith*, Nos. 14-5003, 14-5006, 2014 WL 3537847, at *6-7 (10th Cir. July 18, 2014), *aff'g Bishop v. United States ex rel. Holder*, 962 F. Supp. 2d 1252 (N.D. Okla. 2014), *petition for cert. filed*, No. 14-136 (Aug. 6, 2014)); *Kitchen*, 755 F.3d at 1204-08; *Brenner v. Scott*, Nos. 4:14cv107-RH/CAS, 4:14cv138-RH/CAS, 2014 WL 4113100, at *11-12 (N.D. Fla. Aug. 21, 2014) (preliminary injunction); *Bowling v. Pence*, No. 1:14-cv-00405-RLY, 2014 WL 4104814, at *4 (S.D. Ind. Aug. 19, 2014) (relying on *Baskin v. Bogan*, Nos. 1: 14-cv-00355-RLY-TAB, 1:14-CV-00404-RLY-TAB, 2014 WL 2884868, at *6 (S.D. Ind. June 25, 2014), *aff'd by Baskin*, 2014 WL 4359059); *Love v. Beshear*, No. 3:13-cv-750-H, 2014 WL 2957671, at *2-3 (W.D. Ky. July 1, 2014); *Baskin*, 2014 WL 2884868, at *4-6; *Wolf*, 986 F. Supp. 2d at 982, 991; *Whitewood v. Wolf*, 992 F. Supp. 2d 410, 419-22 (M.D. Pa. 2014); *Geiger v. Kitzhaber*, Nos. 6:13-cv-01834-MC, 6:13-cv-02256-MC, 2014 WL 2054264, at *1 n.1 (D. Or. May 19, 2014), *appeal dismissed for lack of standing*, No. 14-35427 (9th Cir. Aug. 27, 2014); *Latta v. Otter,* No. 1: 13-cv-00482–CWD, 2014 WL 1909999, at *8-9 (D. Idaho May 13, 2014); *DeBoer v. Snyder,* 973 F. Supp. 2d 757, 773 n.6 (E.D. Mich. 2014); *De Leon v. Perry*, 975 F. Supp. 2d 632, 647-49 (W.D. Tex. 2014) (preliminary injunction), *appeal docketed*, No. 14-50196 (5th Cir. Mar. 1, 2014); *McGee v. Cole*, No. 3:13-24068, 2014 WL 321122, at *8-10 (S.D. W.Va. Jan. 29, 2014).

Finally, even if *Baker* retained any precedential value, it would not apply here. "A summary disposition affirms only the judgment of the court below, and no more may be read into [the Supreme Court's] action than was essential to sustain that judgment." *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182-83 (1979) (citations omitted). "Questions which 'merely lurk in the record' are not resolved, and no resolution of them may be inferred." *Id.* at 183. The Minnesota Supreme Court decision affirmed in *Baker* involved a statute that did not expressly address whether same-sex couples could marry and was not enacted for the purpose of excluding same-sex couples from marriage. *See Baker v. Nelson*, 191 N.W.2d 185 (Minn. 1971). In contrast, the present case is challenging an intentionally discriminatory exclusion from marriage.

III.    ***Citizens for Equal Protection v. Bruning* is not controlling.**

*Citizens for Equal Protection v. Bruning* has no bearing on Plaintiffs' due process argument because no due process claim was raised in that case. *See Citizens for Equal Prot. v. Bruning*, 455 F.3d 859 (8th Cir. 2006). Thus, *Bruning* could not justify judgment on the pleadings as to Plaintiffs' Count I. The due process claim here provides an independent basis for Plaintiffs' requested relief. *Windsor* was decided on both due process and equal protection grounds. *See* 133 S. Ct. at 2675. Both the Fourth and the Tenth Circuit invalidated marriage exclusions like Missouri's as violations of due process. *See Bostic*, 2014 WL 3702493, at *16; *Bishop*, 2014 WL 3537847, at *6; *Kitchen*, 755 F.3d at 1218. Additionally, *Bruning* does not control Plaintiffs' equal protection claims because its holding that rational-basis review applies to sexual orientation classifications is no longer good law in light of the Supreme Court's intervening decision in *Windsor*. *See Young v. Hayes*, 218 F.3d 850, 853 (8th Cir. 2000)

13

(recognizing that previous Eighth Circuit decisions are not binding where "an intervening expression of the Supreme Court is inconsistent with those previous opinions").

Before *Windsor* was decided, the Ninth Circuit—like the Eighth Circuit in *Bruning*[4]— had held that sexual orientation classifications are subject to rational-basis review. *See Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir.2008). But after *Windsor*, the Ninth Circuit concluded that its earlier decision was no longer good law and held that "*Windsor* requires that heightened scrutiny be applied to equal protection claims involving sexual orientation." *SmithKline Beecham Corp. v. Abbott Labs*, 740 F.3d 471, 481 (9th Cir. 2014), *reh'g en banc denied*, 2014 WL 2862588 (June 24, 2014). As recognized by the Ninth Circuit, the view that classifications based on sexual orientation do not warrant heightened scrutiny review is no longer tenable. *Bruning* is no longer good law as to whether classifications that discriminate on the basis of sexual orientation are subject to heightened scrutiny.

In addition to abrogating *Bruning*'s holding with respect to the standard of scrutiny, *Windsor* also thoroughly repudiated *Bruning*'s reasoning. *Bruning* concluded that excluding same-sex couples from marriage rationally advances an ostensible legitimate government interest in "encourag[ing] heterosexual couples to bear and raise children in committed marriage relationships." *Bruning*, 455 F.3d at 868. Before *Windsor*, some courts accepted that argument, but, in light of *Windsor*'s subsequent guidance, federal courts have unanimously concluded that

_____

[4]      *Bruning* applied rational-basis review to uphold a state's marriage ban, but did not apply the Supreme Court's heightened scrutiny factors. *See Bruning*, 455 F.3d at 867-68, 868 n.3. It instead tautologically concluded that heightened scrutiny does not apply because a rational basis allegedly existed for such classifications in some circumstances. *Id.* But, if the existence of a rational basis in a particular case precluded heightened scrutiny, then heightened scrutiny would be meaningless. The whole point of heightened scrutiny is that a stronger justification than a rational basis is required for certain classifications that have historically been prone to abuse.

14

"it is wholly illogical to believe that state recognition of the love and commitment between same-sex couples will alter the most intimate and personal decisions of opposite-sex couples." *Kitchen*, 755 F.3d at 1223. Indeed, the Bipartisan Legal Advisory Group defending the Defense of Marriage Act in *Windsor* asserted the same purported governmental interest in responsible procreation, Merits Brief of Bipartisan Legal Advisory Group of the U.S. House of Representatives, *United States v. Windsor*, 133 S. Ct. 2675 (2013) (No. 12-307), 2013 WL 267026, at *21, and the Supreme Court necessarily rejected that argument when it held that "no legitimate purpose" could justify the inequality and stigma that DOMA imposed on same-sex couples and their families. 133 S. Ct. at 2696.

This is not the first occasion for a district court to face a question where an intervening Supreme Court case has rendered an earlier Eighth Circuit decision non-controlling. In *Rhines v. Weber*, the district court permitted a petition for writ of habeas corpus to be held in abeyance while the petitioner's unexhausted claims were presented to a state court despite an Eighth Circuit holding that a district court cannot hold petitioner's petition for habeas relief in abeyance while the petitioner returned to state court to exhaust his claims. *See Rhines v. Weber*, CIV 00-5020-KES, 2002 WL 33969082 (D.S.D. July 3, 2002), *vacated and remanded*, 346 F.3d 799 (8th Cir. 2003), *vacated and remanded*, 544 U.S. 269 (2005). The Supreme Court ultimately vindicated the view that a district court has discretion to stay a habeas petition to allow unexhausted claims to be presented to the state court, holding that the Eighth Circuit erred in concluding that a stay and abeyance is always impermissible. *Rhines v. Weber*, 544 U.S. 269, 279 (2005).

Because *Bruning* has no bearing on Plaintiffs' due process claim and is no longer good law with respect to Plaintiffs' equal protection claims, the decision is not controlling. Even so,

the facts alleged here, taken as true, establish that heightened scrutiny is warranted and that the marriage exclusion is not even rationally related to a legitimate government interest.

**IV.    The marriage ban does not survive rational-basis review.**

The rational basis identified by Missouri is "a rational interest in setting forth a standardized definition of marriage, such that local authorities (*e.g.*, recorders of deeds) responsible for issuing marriage licenses do so consistently, uniformly, and predictably across Missouri's 114 counties." (Doc. #8, at p. 12).

Plaintiffs agree that Missouri has a legitimate interest in having a standard definition of marriage. This does not end the analysis, however. As Missouri implicitly concedes, that rationale would not survive review under heightened scrutiny. The classification struck down in *Loving* was standardized and could be enforced consistently, uniformly, and predictably—as could an exclusion preventing prisoners or persons with disabilities from marrying. Indeed, under Missouri's theory, the state could change course and exclude different-sex couples from entering into marriages—a rule that could be enforced consistently, uniformly, and predictably. There is no possibility that Missouri may exclude inter-racial couples, prisoners, persons with disabilities, or different-sex couples from marriage without running afoul of the Constitution.[5]

---

[5]    Missouri's attempt to prevent inmates from marrying without the warden's consent was unsuccessful. *Safley v. Turner*, 586 F. Supp. 589, 594-95 (W.D. Mo. 1984), *aff'd*, 777 F.2d 1307 (8th Cir. 1985), *aff'd in part, rev'd in part*, 482 U.S. 78 (1987). While initially successful, Missouri's prohibition of interracial marriage was eventually thwarted. *See State v. Jackson*, 80 Mo. 175 (1883) (upholding anti-miscegenation law); Op. Mo. Att'y Gen. 308-67 (concluding that Missouri's prohibitions against interracial marriage are unconstitutional).

Even if rational-basis review applies to Plaintiffs' claims, the "uniformity" rationale is still insufficient because it does not explain why the uniform definition should be one that excludes same-sex couples instead of one that includes them. Indeed, Defendants have made no attempt to assert that a rational relationship between uniformity and the exclusion even exists. "When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment." *Hooper v. Bernalillo Cnty. Assessor*, 472 U.S. 612, 618 (1985). The basic requirement of the Equal Protection Clause is that when the government draws definitional lines "all persons similarly situated should be treated alike." *Cleburne*, 473 U.S. at 439.

Despite putting forward this single legitimate state interest, Missouri's marriage exclusion cannot survive rational-basis review because the state interest, even if legitimate, is not rationally related to the exclusion of same-sex couples from marriage. As other states have demonstrated, it is not difficult to have a consistent, uniform, and predictable standardized definition of marriage that does not discriminate. *See, e.g.*, 750 Ill. Comp. Stat. Ann. 5/201 (2014) ("A marriage between 2 persons licensed, solemnized and registered as provided in this Act is valid in this State."); Minn. Stat. Ann. § 517.01 (2013) ("A civil marriage, so far as its validity in law is concerned, is a civil contract between two persons, to which the consent of the parties, capable in law of contracting, is essential."). Missouri does not attempt to explain why it makes any logical sense whatsoever to exclude same-sex couples from marriage to advance this

17

interest. Indeed, the same interest could be used to justify a uniform definition that excluded people with blue eyes or people who are left-handed from marrying.[6]

## V. Plaintiffs seek the same "marriage" as different-sex couples, not a new institution of "same-sex marriage."

As explained in the suggestions in support of Plaintiffs' motion for summary judgment, in accordance with principles articulated by the Supreme Court as well as courts in Missouri, Plaintiffs do not seek a new fundamental right. Courts throughout the nation continue to recognize that the fundamental right to marry and have one's marriage recognized embraces same-sex couples. *See Bostic*, 2014 WL 3702493, at *1; *Bishop*, 2014 WL 3537847, at *1; *Kitchen*, 755 F.3d at 1199, 1218; *see also, e.g.*, *Brenner*, 2014 WL 4113100, at *8-11; *Burns v. Hickenlooper*, No. 14-cv-01817-RM-KLM, 2014 WL 3634834, at *2 (D. Colo. July 23, 2014) (preliminary injunction), *appeal docketed*, No. 14-1283 (10th Cir. July 24, 2014); *Baskin*, 2014 WL 2884868, at *10; *Whitewood*, 992 F. Supp. 2d at 423-24; *De Leon*, 975 F. Supp. 2d at 659-60; *Obergefell v. Wymyslo*, 962 F. Supp. 2d 968, 997 (S.D. Ohio 2013), *appeal docketed*, No. 14-3057 (6th Cir. argued Aug. 6, 2014); *Perry v. Schwarzenegger*, 704 F. Supp. 2d 921, 995 (N.D. Cal. 2010), *aff'd on other grounds sub nom. Perry v. Brown*, 671 F.3d 1052 (9th Cir. 2012), *vacated and remanded on other grounds sub nom. Hollingsworth v. Perry*, 133 S. Ct. 2652 (2013) (dismissing appeal). As the Tenth Circuit explained, the fundamental right to marry and have one's marriage recognized is not a new right. "[T]he question as stated in *Loving*, and as

---

[6]     "[I]n a same-sex marriage case the issue is not whether heterosexual marriage is a socially beneficial institution but whether the benefits to the state from discriminating against same-sex couples clearly outweigh the harms that this discrimination imposes." *Baskin v. Bogan*, Nos. 14-2386, 14-2387, 14-2388, 14-2526, 2014 WL 4359059, at *2 (7th Cir. Sept. 4, 2014), *aff'g Baskin v. Bogan*, Nos. 1: 14-cv-00355-RLY-TAB, 1:14-CV-00404-RLY-TAB, 2014 WL 2884868 (S.D. Ind. June 25, 2014), *Wolf v. Walker*, 986 F. Supp. 2d 982 (W.D. Wis. 2014).

18

characterized in subsequent opinions, was not whether there is a deeply rooted tradition of interracial marriage, or whether interracial marriage is implicit in the concept of ordered liberty; the right at issue was '*the freedom of choice to marry.*'" *Kitchen*, 755 F.3d at 1210 (emphasis added) (quoting *Loving*, 388 U.S. at 12); *see also Bostic*, 2014 WL 3702493, at *9 (observing that the Supreme Court's marriage cases "speak of a broad right to marry that is not circumscribed based on the characteristics of the individuals seeking to exercise that right").

Missouri argues that the Supreme Court has never explicitly identified a right to same-sex marriage, but the Court has made abundantly clear that "[t]he right to marry is of fundamental importance for all individuals." *Zablocki v. Redhail*, 434 U.S. 374, 384 (1978). That right has never been defined by the partner chosen. It has been defined only by the right to make the choice. *See Loving*, 388 U.S. at 12 (holding that the Fourteenth Amendment applies to "the freedom of choice to marry," and hence "the freedom to marry, or not marry, a person of another race resides with the individual and cannot be infringed by the State"); *Lawrence*, 539 U.S. at 574 ("[O]ur laws and tradition afford constitutional protection to personal decisions relating to marriage" because of the "respect the Constitution demands for the autonomy of the person making [the] choices … [p]ersons in a homosexual relationship may seek autonomy for these purposes, just as heterosexual persons do."); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 620 (1984) ("[T]he Constitution undoubtedly imposes constraints on the State's power to control the selection of one's spouse."); *Kitchen*, 755 F.3d at 1215 ("[T]he Supreme Court has traditionally described the right to marry in broad terms independent of the persons exercising it."); *Bostic*, 2014 WL 3702493, at *9. The Supreme Court has never announced a right to interracial marriage, disabled marriage, or prisoner marriage—yet each is enveloped within the fundamental right to marry. The fundamental right to choose one's spouse belongs to the individual.

19

**Conclusion**

For these reasons, as well as those set forth in Plaintiffs' suggestions in support of their motion for summary judgment, Missouri's motion for judgment on the pleadings should be denied.

Pursuant to Local Rule 7.0(g), Plaintiffs request oral argument on the motion for judgment on the pleadings.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Grant R. Doty, #60788
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
trothert@aclu-mo.org
gdoty@aclu-mo.org

Gillian R. Wilcox, #61278
ACLU of Missouri Foundation
3601 Main Street
Kansas City, Missouri 64111
(816) 470-9938
gwilcox@aclu-mo.org

ATTORNEYS FOR PLAINTIFFS

20

**Certificate of Service**

I certify that a copy of the forgoing was filed electronically on September 5, 2014, and made available to counsel of record.

/s/ Anthony E. Rothert