UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| Kyle Lawson, et al., | ) | |
|---|---|---|
| Plaintiffs, | ) | |
| v. | ) | |
| Robert Kelly, | ) | No. 4:14-cv-00622-ODS |
| Defendant. | ) | |
| State of Missouri, | ) | |
| Intervenor. | ) | |

### SUGGESTIONS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

Plaintiffs are the prevailing party in this action and submit the following suggestions in support of their motion for attorneys' fees and expenses.

**I. Background**

This case was initiated on June 24, 2014, when Plaintiffs filed a three-count petition, pursuant 42 U.S.C. § 1983, in Missouri state court against Robert T. Kelly, in his official capacity as Director of the Jackson County Department of Recorder of Deeds. Plaintiffs challenged Defendant's refusal to issue them marriage licenses for the sole reason that they seek to marry someone of the same sex. Plaintiffs sought an injunction requiring Defendant to issue marriage licenses to them and a declaration that Missouri Revised Statutes section 451.022; Article I, Section 33 of the Missouri Constitution; and any other statute or common law preventing same-sex couples from marrying pursuant to the same terms and conditions as different-sex couples, violate the Equal Protection and Due Process Clauses of the United States Constitution.

1

The State of Missouri intervened and removed the lawsuit to federal court. Although Plaintiffs initially opposed removal, they withdrew their motion for remand after procedural defects in the removal process were corrected.

On November 7, 2014, this Court found that both challenged laws violate the Due Process and Equal Protection Clauses of the Constitution. Doc. # 50, at 18. This Court also enjoined Defendant Kelly, in his official capacity, "from declining to issue a marriage license based on the genders of the applicants or otherwise enforcing the prohibition on issuing a marriage license except to a man and a woman." *Id*. Judgment was entered the same day. Doc. # 51.

## II. Availability of Attorneys' Fees – Plaintiffs are the Prevailing Party

The same federal law that prohibits deprivation of constitutional rights by state actors provides for an award of attorneys' fees to prevailing plaintiffs. *See* 42 U.S.C. § 1988. The Eighth Circuit has articulated the important public policy underlying the fee-shifting provisions implicated by successful section 1983 litigation:

> Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'" S.Rep. No. 1011, 94th Cong., 2d Sess. 5 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5908, 5913. The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators. *See Id*. A plaintiff bringing a civil rights action "does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest...." *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968).

*Casey v. City of Cabool*, 12 F.3d 799, 805 (8th Cir. 1993).

The availability of attorneys' fees to successful litigants in civil rights cases serves two significant purposes. First, the availability of fees ensures effective access to the judicial process for litigants with meritorious claims. *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983); *Casey*, 12 F.3d at 805. Second, civil rights litigation serves the important public purpose of protecting and clarifying important constitutional rights. *Milton v. Des Moines, Iowa*, 47 F.3d 944, 946 (8th Cir. 1995). Not only Plaintiffs, but all citizens, benefit from Plaintiffs' success and the constitutional rights protected by this case.

According to the Eighth Circuit, "[t]o obtain 'an award of litigation costs,' a party must be a 'prevailing' or 'successful' party, i.e., 'one who has been awarded some relief by the court.'" *Rogers Grp., Inc. v. City of Fayetteville, Ark.*, 683 F.3d 903, 909 (8th Cir. 2012) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 603 (2001)). Before this lawsuit, Plaintiffs were prevented from obtaining marriage licenses and marrying in Missouri because of the laws they challenged. Plaintiffs succeeded in obtaining a judicially enforceable determination that those laws are unconstitutional. Additionally, before this lawsuit, Plaintiffs were denied marriage licenses by Defendant. After, and as a direct result of, this lawsuit, Defendant will issue marriage licenses to Plaintiffs and they will be able to get married in Missouri. For these reasons, Plaintiffs are the prevailing party.

## III.     Attorneys' Fees – Lodestar Amount.

The general principles governing an award of attorneys' fees are well settled. First, to determine the product or "lodestar" figure, the number of hours reasonably expended are multiplied by the attorneys' reasonable hourly rates. *Hensley*, 461 U.S. at 433. The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986); *see also*

*Blum v. Stenson*, 465 U.S. 886, 897 (1984); *accord Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991) (holding that "the lodestar award … is presumptively a reasonable fee, and most factors relevant to determining the amount of the fee are subsumed within the lodestar"); *Casey*, 12 F.3d at 805. In this regard, the Supreme Court has stated: "We ... take as our starting point the self-evident proposition that the 'reasonable attorney's fee' provided by [section 1988] should compensate" for "the work product of an attorney." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989).

> A. Hourly Rates

In setting reasonable attorneys' fees, the touchstone is whether the hourly rate is in line with those prevailing in the community for comparable services by lawyers of comparable skill, experience, and reputation. *See Moore v. City of Des Moines*, 766 F.2d 343, 346 (8th Cir. 1988). The Supreme Court has "repeatedly stressed that attorney's fees awarded under [section 1988] are to be based on market rates for the services rendered." *Jenkins*, 491 U.S. at 283-84 (citing *Blanchard v. Bergeron,* 489 U.S. 87 (1989); *Riverside v. Rivera*, 477 U.S. 561 (1986); *Blum v. Stenson*, 465 U.S. 886 (1984)). This is the case "regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum*, 465 U.S. at 895. The "prevailing market rate method used in awarding fees … shall apply as well to those attorneys who practice privately and for profit but at reduced rates reflecting non-economic goals." *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988) (en banc).

The background and experience of the Plaintiffs' attorneys in this case are set forth in the Affidavits of Anthony E. Rothert (Exhibit 1), Grant R. Doty (Exhibit 2), and Gillian R. Wilcox (Exhibit 3). Their hourly rates are as follows:

4

Case 4:14-cv-00622-ODS   Document 56   Filed 11/18/14   Page 4 of 11

| Attorney | Hourly Rate |
|---|---|
| Anthony E. Rothert | $ 350.00 |
| Grant R. Doty | $ 275.00 |
| Gillian R. Wilcox | $ 225.00 |

These rates are reasonable, especially given that this case involved a specialized and complex area of the law and required Plaintiffs to find attorneys knowledgeable in this area willing and able to expend significant amounts of time in a short period without any promise of compensation other than what this Court might award in the future. *See Republican Party of Minn. v. White*, 456 F.3d 912 (8th Cir. 2006) (approving hourly rates of $400 and $425 in a section 1983 appeal finding a violation of the First Amendment); *Holland v. City of Gerald, Mo.*, No. 4:08CV707 HEA, 2013 WL 1688300, at *4 (E.D. Mo. Apr. 18, 2013) (concluding an hourly rate of $450 was reasonable). Moreover, a Missouri court recently approved a motion for attorneys' fees at these rates in a similar challenge to Missouri's refusal to recognize the lawful marriages of same-sex couples performed in other jurisdictions. *Barrier v. Vasterling*, No. 1416-CV03892, 2014 WL 5469888, at *10 (Mo. Cir. Oct. 27, 2014). Furthermore, the hourly rates requested here are also reasonable when compared to current Missouri rates. "The average 2012 Missouri attorneys' billing rate is $339/hour." *Comas v. Schaefer*, No. 10-4085-CV-C-MJW, 2012 WL 5354589, at *3 (W.D. Mo. Oct. 29, 2012).[1]

For all of these reasons, the hourly rates requested are reasonable under the circumstances of this case.

---

[1]    A recent survey of billing rates in Missouri, which is attached to Mr. Rothert's affidavit (Ex. 1-B), further demonstrates that the rates sought are reasonable.

B. Computation of the Lodestar

The lodestar is the product of the attorneys' hourly rates multiplied by the number of compensable hours expended on the matter. *Hensley*, 461 U.S. at 433. A reasonable fee can be set in this case that is consistent with established case law and local rates and practices by multiplying the number of compensable hours[2] by the hourly rates of the Plaintiffs' attorneys.

The attorneys' billing records reflect that they billed a combined 154.8 hours on this case.[3] The lodestar for all billable hours is $43,557.50; however, the attorneys have exercised judgment and reduced the hours for which they seek compensation by a total of 18.8 hours. Ex. 1 at ¶ 4; Ex. 2 at ¶ 2; Ex. 3 at ¶ 3. In particular, they do not seek compensation for the time they spent conferring with one another or work that was proved unnecessary, redundant, or, in retrospect, took longer than it should have. Plaintiffs have also excluded time related to their request for a permanent injunction against the State of Missouri, which was not granted. The number of hours reflected in this table is reasonable:

|  | Hours | Rate | Total |
|---|---|---|---|
| Anthony E. Rothert | 63.5 | $350.00 | $21,840.00 |
| Grant R. Doty | 4.9 | $275.00 | $1,347.50 |
| Gillian R. Wilcox | 67.6 | $225.00 | $15,210.00 |
|  |  | Total: | $38,397.50 |

In addition, Plaintiffs' attorneys have not submitted law clerk or paralegal time for reimbursement, although such work is compensable. *See Jenkins*, 491 U.S. at 285. The assistance

---

[2] The number of hours worked and hours for which compensation is requested for each attorney is included with his or her affidavit, which incorporates an itemization of the hours and the work for which compensation is not sought.

[3] This does not include the time spend by ACLU attorneys Joshua Block and Andrew McNulty. While their contributions to the case were important, Plaintiffs exclude their hours to avoid any appearance of overbilling.

6

of law clerks and paralegals reduced the number of attorney hours required for this case and, ultimately, the number of hours for which reimbursement is sought.

        C.        No Further Reduction to the Lodestar Is Warranted

Although the lodestar is a presumptively reasonable fee, it may be adjusted upward or downward in certain circumstances. *Hensley*, 461 U.S. at 433. Plaintiffs obtained all of the relief that they sought in their petition: a declaration that the challenged laws are unconstitutional and an injunction that requires Defendant to issue marriages licenses to them. Because they obtained full relief, an award of the loadstar is appropriate.

Plaintiffs advanced three ways in which the challenged laws violate the Fourteenth Amendment, and this Court ruled in their favor on two of them. Even so, "[t]he law is clear that '[u]nsuccessful legal efforts are compensable as long as they are not frivolous.'" *Berry v. N.Y. State Dep't of Corr. Servs.*, 947 F. Supp. 647, 652 (W.D.N.Y. 1996) (quoting *Big R Food Warehouses v. Local 338 RWDSU*, 896 F. Supp. 292, 298 (E.D.N.Y.1995), and citing *Seigal v. Merrick*, 619 F.2d 160, 164–65 (2d Cir.1980)). Plaintiffs' equal protection claim based on sexual orientation was not frivolous. Indeed, the argument has been accepted by several courts in the past year. *See, e.g.*, *Latta v. Otter*, No. 14-35420, 2014 WL 4977682, *3-4, *8-10 (9th Cir. Oct. 7, 2014); *Baskin v. Bogan*, 766 F.3d 648, 657-58, 671 (7th Cir. 2014), *cert. denied*, No. 14-277, 2014 WL 4425162 (U.S. Oct. 6, 2014) and *cert. denied sub nom. Walker v. Wolf*, No. 14-278, 2014 WL 4425163 (U.S. Oct. 6, 2014); *State of Missouri v. Florida*, No. 1422-CC0927, 2014 WL 5654040, at *4 (Mo. Cir. Ct. Nov. 5, 2014); *see also Barrier*, 2014 WL 5469888, at * 7 (involving recognition of marriages from other jurisdictions).

Even so, in determining whether a fee award should be adjusted, courts examine whether any unsuccessful claims were related to those on which the plaintiff prevailed as well as whether

the level of success achieved makes the hours expended and associated fee calculation "a satisfactory basis for making a fee award[.]" *Id*. Because parties frequently raise multiple claims in a single lawsuit, they may succeed on some and not others. "Once a party is found to have prevailed, '[a] fee award should not be reduced merely because a party did not prevail on every theory raised in the lawsuit.'" *Casey*, 12 F.3d at 806. Instead, for a fee to be reduced because relief was not granted on certain claims, the unsuccessful claims must be "unrelated" to those for which relief was granted. *Hensley*, 461 U.S. at 433.

Unrelated claims are "distinctly different claims for relief that are based on different facts and legal theories." *Id*. Notably, the Supreme Court has observed that, in the context of allegations involving civil rights violations, "such unrelated claims are unlikely to arise with great frequency." *Id*. What is more common with civil rights cases is that "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id*. And, in such a case, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." *Id*. "Such a lawsuit cannot be viewed as a series of discrete claims." *Id*. Put another way, when a lawsuit involves common facts and related legal theories, "counsel's time is devoted to the litigation as a whole, rather than on specific theories of relief, and compensation should be based on all hours reasonable expended to achieve a successful result." *Hendrickson*, 934 F.2d at 164. Thus, a fee award should reflect "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. Moreover, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee ... [and] the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* "Litigants in good faith may raise alternative legal grounds

for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Id*. at 435. "The result is what matters[; therefore] the most critical factor is the degree of success obtained." *Id.* at 435, 436.

Each of the legal theories advanced by Plaintiffs challenged the denial of marriage licenses to same-sex couples in Missouri. The outcome of the case resulted in Plaintiffs obtaining the relief they sought. This Court could not have granted them any greater relief had it ruled in their favor on Count II as well. Moreover, each of Plaintiffs' claims was related and based on common facts. As a result, no reduction of the lodestar is appropriate in light of Plaintiffs' overall success in a securing decision that granted them precisely the relief they sought.

**IV.    Expenses**

Plaintiffs also seek to recover the expenses incurred in the prosecution of this case. Recoverable expenses include all costs and out-of-pocket expenses of Plaintiffs' attorneys. *Neufeld v. Searle Labs.*, 884 F.2d 335, 342 (8th Cir. 1989); *see also Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (holding that a reasonable attorneys' fee must include "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys"). The expenses in this case are the filing fee paid to the circuit court of Jackson County ($115.30) and the cost of a special process server ($50.00). *See* Ex. 1 at ¶ 8. Thus, Plaintiffs should be awarded expenses of $165.30.

**V.    Conclusion**

Based on the foregoing considerations, together with those set forth in the accompanying affidavits and other exhibits, this Court should award to Plaintiffs attorneys' fees of $38,397.50 and expenses of $165.30.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Grant R. Doty, #60788
Andrew McNulty, #67138
ACLU of Missouri Foundation
454 Whittier Street
St. Louis, Missouri 63108
Phone: 314-652-3114
Fax: 314-652-3112
trothert@aclu-mo.org
gdoty@aclu-mo.org
amcnulty@aclu-mo.org

Gillian R. Wilcox, #61278
ACLU of Missouri Foundation
3601 Main Street
Kansas City, Missouri 64111
gwilcox@aclu-mo.org

Joshua Block, admitted pro hac vice
LGBT & AIDS Project
ACLU Foundation
125 Broad Street, 18th Floor
New York, New York 10004

ATTORNEYS FOR PLAINTIFFSS

## Certificate of Service

I certify that a copy of the forgoing was filed electronically on November 18, 2014, and made available to counsel of record.

.

/s/ Anthony E. Rothert